Case 14-00302   Document 68   Filed in TXSB on 06/18/14   Page 1 of 12



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
06/18/2014

| | | |
|---|---|---|
| IN RE: | § § | |
| MICHAEL GLYN BROWN, | § § | CASE NO: 13-35892 |
| LIONHART COMPANY, INC., | § § | CASE NO: 13-36390 |
| CASTLEMANE, INC., | § § | CASE NO: 13-36407 |
| PRORENTALS, INC., | § § | CASE NO: 13-36408 |
| SUPERIOR VEHICLE LEASING CO., INC., | § § § | CASE NO: 13-36410 |
| MG BROWN COMPANY, LLC, | § § | CASE NO: 13-36411 |
| Debtors. | § § § | (Jointly Administered Under Case No. 13-35892-H4-7) |
| IN RE: | § § § | |
| CAROL PAREDES AND MICHAEL J. AVILES. | § § | MISC. NO. 14-00302 |

**MEMORANDUM OPINION**
**(Docket Nos. 15 and 16, Misc. No. 14-0302)**

    Before the Court for consideration is the Emergency Motion for Order Setting Hearing and Compelling Carol Paredes and her Counsel to Appear and Show Cause Why They Should not be Sanctioned for Contempt and Spoliation of Evidence [Docket No. 15] and the Court's Order Setting Hearing and Compelling Carol Paredes and her Counsel to Appear and Show Cause Why They Should not be Sanctioned for Contempt and Spoliation of Evidence. [Docket No. 16]. After considering the evidence, the applicable law and the arguments of the parties, the Court will grant limited relief as set forth below. An order consistent with this opinion will issue.

**FACTUAL BACKGROUND**

    On January 23, 2013 (the "Petition Date"), Dr. Michael Brown filed a voluntary chapter 11 petition in the United States Bankruptcy Court for the Southern District of Florida. [Docket

1 / 12

No. 1[1]]. On September 24, 2013, the Florida Bankruptcy Court ordered the appointment of a chapter 11 trustee and transferred the case to the Southern District of Texas. [Docket No. 435]. Upon receipt by the Clerk of the Court, the case was assigned to the Hon. Jeff Bohm, Chief United States Bankruptcy Judge for the Southern District of Texas. By Order entered September 30, 2013, the Court approved the appointment of Ronald Sommers as the chapter 11 trustee in the case. [Docket No. 457].

From its origin, the case was problematic. Dr. Brown was less than forthcoming in his required disclosures to the Court, the trustee and his creditors. He failed to disclose the existence of significant assets as well as multiple transfers made both before and after the bankruptcy filing. The trustee discovered substantial property, including cash, jewelry, art and furniture that Dr. Brown failed to disclose in his schedules. With the aid of private investigators, the trustee documented a pattern of collusive behavior by Dr. Brown to hide estate property from the trustee using a network of former mistresses, friends and employees. The trustee's efforts were complicated in October 2013 when Dr. Brown died as a result of an apparent suicide.

Carol Paredes is a French citizen living in Miami, Florida. Ms. Paredes is one of Dr. Brown's former girlfriends. During their relationship, Dr. Brown gave Ms. Paredes a number of expensive gifts. Dr. Brown also provided Ms. Paredes with two cell phones, an international iPhone for use abroad and an iPhone 4S for use in the United States.

Although Ms. Paredes' relationship with Dr. Brown ended in early 2013, she remained in contact with Jean-Paul Marongin, Dr. Brown's driver. The trustee believes that Mr. Marongin played a critical role in Dr. Brown's efforts to conceal assets from the estate. After Dr. Brown's suicide, Mr. Marongin reportedly sent Ms. Paredes a text message stating, "I know where everything is" (the "Marongin Text").

The trustee's investigators visited Ms. Paredes on October 24, 2013. Ms. Paredes allowed the investigators into her home and met with them for approximately four hours. During the interview, Ms. Paredes showed her iPhone 4S to the trustee's investigators and offered them the opportunity to read and copy the Marongin Text. [January 9, 2014 Transcript, 94:15–94:23]. Inexplicably, the investigators left Ms. Paredes' home without taking possession of the iPhone 4S or making a copy of the Marongin Text. [January 9, 2014 Transcript, 94:12–95:9; 131:4–132:16].

Approximately two days later, Ms. Paredes spoke to the trustee. Ms. Paredes again offered to send him a copy of the Marongin Text. [January 9, 2014 Transcript, 84:23-85:21; 95:19-96:1]. The trustee replied "[n]ot now." [January 9, 2014 Transcript, 84:23-85:21; 95:19-96:1].

On November 19, 2013, the Court entered its Second Order Compelling Certain Parties to Appear for Bankruptcy Rule 2004 Examination (the "2004 Exam Order"). [Docket No. 854]. The 2004 Exam Order required Ms. Paredes to appear for her examination no later than November 22, 2013. Pursuant to the 2004 Exam Order, the trustee issued his Notice of Taking Rule 2004 Video Conference Deposition of Carol Paredes (the "Notice") on November 19, 2013.

---

[1] Unless otherwise noted, all docket references are to Case No. 13-35892.

[Docket No. 882]. The Notice also requested the production of documents, including a request for all electronic communications between Ms. Paredes and Mr. Marongin. The Notice required Ms. Paredes to appear for her examination at the offices of the trustee's Florida counsel at 9:30 a.m. on November 22, 2013.

Ms. Paredes retained Michael Aviles of the firm DeSimone, Aviles, Shorter & Oxamendi, LLP in New York, New York to represent her. Mr. Aviles is an attorney licensed to practice law in the State of New York. Mr. Aviles is not licensed in the State of Texas and is not admitted to practice law in the Southern District of Texas. Mr. Aviles did not seek to be admitted *pro hac vice* in the Southern District of Texas. Mr. Aviles did not charge Ms. Paredes for his time nor did he enter into an engagement letter with Ms. Paredes. Ms. Paredes did agree, however, to cover Mr. Aviles' travel expenses from New York to Miami.

On November 22, 2013, Mr. Aviles contacted the trustee's counsel. [Trustee's Exhibit 5]. After informing the trustee's counsel that Ms. Paredes would not be appearing, Mr. Aviles and the trustee agreed Ms. Paredes' examination would be conducted on December 5, 2013. On November 26, 2013, the trustee issued his Amended Notice of Taking Rule 2004 Video Conference Deposition of Carol Paredes (the "Amended 2004 Notice"). The Amended 2004 Notice designated December 5, 2013 as the date for the examination and contained the same document requests as the Notice.

On December 5, 2013, Ms. Paredes appeared for her examination. Mr. Aviles represented Ms. Paredes in the examination. Ms. Paredes did not produce any documents at the examination. Ms. Paredes testified that her iPhone 4S suffered a data loss approximately three days prior to the examination and that all text messages had been erased from her phone. Ms. Paredes further testified she did not know the reason for the loss but speculated the culprit was either her six-year old child or a recent software update. Again, the trustee failed to take possession of the iPhone 4S. Instead, the trustee extracted a promise from Ms. Paredes that she would attempt to recover the lost data from the phone. [January 9, 2014 Transcript, 89:19-90:22].

The trustee's counsel spoke to Mr. Aviles on December 5, 2013 to confirm that the text messages were lost. On December 6, 2013, the trustee's counsel sent an e-mail to Mr. Aviles concerning Ms. Paredes' agreement that she would attempt to recover the data lost from her phone. The trustee's counsel also made multiple requests for an update from Mr. Aviles prior to a December 11, 2013 status conference. [Trustee's Exhibits 9 and 10]. Mr. Aviles failed to respond to the trustee's inquiries.

Ms. Paredes testified that she did not use a back-up service for her iPhone 4S. [January 9, 2014 Transcript 97:24-95:11]. She further testified that she called her cellular service provider for assistance in recovering the text messages and was informed that the data was irretrievable. [January 9, 2014 Transcript 96:17-19].

On December 10, 2013, Ms. Paredes "lost" the iPhone 4S while on a shopping trip. She immediately purchased a replacement phone, an iPhone 5S. Although Ms. Paredes informed Mr.

Aviles of the loss of the iPhone 4S, Mr. Aviles chose not to convey this information to the trustee or the Court.

On December 12, 2013, the trustee's counsel contacted Mr. Aviles and told him the Court had ordered Ms. Paredes to appear before the Court on December 18, 2013. [Trustee's Exhibit 11]. An order reflecting the Court's directive was entered on December 13, 2013. [Docket No. 1007].

On December 13, 2013, the trustee also filed his Emergency Motion to Compel Carol Paredes to Turn Over Cellular Telephone to Facilitate Data Recovery. [Docket No. 1006]. The Court scheduled a hearing on the motion for December 18, 2013. The trustee's counsel sent a copy of the Order Compelling Carol Paredes to Appear at the December 18, 2013 Status Conference and a copy of the Emergency Motion to Compel Carol Paredes to Turn Over Cellular Telephone to Facilitate Data Recovery to Mr. Aviles. [Docket No. 1006].

On December 18, 2013, the Court conducted a hearing on the trustee's Emergency Motion to Compel Carol Paredes to Turn Over Cellular Telephone. Mr. Aviles appeared by telephone on behalf of Ms. Paredes. [December 18, 2013 Transcript, p. 6, lines 22-24]. Contrary to his assertion that he was little more than a passive bystander in the hearing, Mr. Aviles argued that the turnover of the phone violated Ms. Paredes' Fourth Amendment rights and that the Amended 2004 Notice was unconstitutionally overbroad. Once it became evident the trustee's motion would be granted, Mr. Aviles argued over the process for recovery of the data from the iPhone 4S. Mr. Aviles ultimately agreed that the iPhone 4S would be turned over to the trustee at his local counsel's office in Miami on December 26, 2013. At no time did Mr. Aviles inform the Court that the iPhone 4S was already lost. The Court entered an order consistent with its oral directive on December 19, 2013. [Docket No. 1006].

On December 26, 2013, Mr. Aviles appeared at counsel's office and produced the iPhone 5S purchased by Ms. Paredes on December 10, 2013. Mr. Aviles testified that he announced to all parties that the phone was new and was not the iPhone 4S. [January 9, 2014 Transcript, 181:21-22]. The trustee's local counsel, Adrian Delancy, and the trustee's data recovery expert, Omelio Ramirez, testified Mr. Aviles did not make any such disclosures until after it was discovered that the delivered phone was not the iPhone 4S. The Court finds Mr. Aviles' testimony is not credible and is inconsistent with the actions of an honest, disinterested attorney.

On December 27, 2013, the trustee filed his Emergency Motion for Order Setting Hearing and Compelling Carol Paredes and Her Counsel to Appear and Show Cause Why They Should not be Sanctioned for Contempt and Spoliation of Evidence (the "Show Cause Motion"). [Docket No. 1045]. The Court entered an order setting the hearing on the Show Cause Motion for January 9, 2014. [Docket No. 1048].

The Court commenced the hearing on the Show Cause Motion on January 9, 2014. The Court heard testimony from Messrs. Aviles, Delancy and Ramirez, Ms. Paredes and the trustee's general counsel. Trustee's Exhibits 1-17 were received into evidence. The Court continued the hearing to February 6, 2014.

By Order entered February 5, 2014, Judge Bohm recused himself from all matters related to Mr. Aviles and Ms. Paredes. [Docket No. 1170]. Judge Bohm's recusal initiated the opening of this miscellaneous matter and the random assignment to the undersigned judge.

The Court conducted a continued hearing on March 6, 2014. The Court gave all parties an opportunity to supplement the record with any additional relevant testimony and documentary evidence. Paredes' Exhibits 1, 2, 3, 5, 6 and 7 were admitted. In addition, the Court heard testimony from Christopher Price, a data recovery expert for Ms. Paredes. The parties made closing arguments and the Court took the matter under advisement.

## ANALYSIS

The trustee asks the Court to hold Ms. Paredes and Mr. Aviles in civil contempt and impose compensatory and coercive sanctions due to their conduct and for spoliation of evidence. The trustee seeks both a monetary remedy as well as a finding of a negative inference against Ms. Paredes in all future litigation in which the phone data from her iPhone 4S is relevant.

The Court has jurisdiction over this contested matter pursuant to 11 U.S.C. § 1334. This contested matter is a core proceeding arising under title 11 pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (O). The Court has constitutional authority to enter a final order in this matter. *See Stern v. Marshall*, 131 S.Ct. 2594 (2011).

The authority to impose sanctions for contempt of an order is an inherent and well-settled power of all federal courts—including bankruptcy courts. *United States. v. Fidanian*, 465 F.2d 755, 757 (5th Cir. 1972); *Ingalls v. Thompson (In re Bradley)*, 588 F.3d 254, 266 (5th Cir. 2009); *Placid Ref. Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997). A movant seeking sanctions for contempt must establish by "clear and convincing evidence" that 1) there was a court order in effect, 2) the order required specific conduct by the respondent, and 3) the respondent failed to comply with the court order. *United States v. City of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004). The respondent may avoid a contempt finding by establishing that it has substantially complied with the order or has made reasonable efforts to comply. *U.S. Steel Corp. v. United Mine Workers*, 598 F.2d 363, 368 (5th Cir. 1979). Further, a present inability to comply with the order may be asserted as a defense to contempt. *United States v. Rylander*, 460 U.S. 752, 757 (1983). Even if liability is established, the respondent may demonstrate mitigating circumstances that might persuade the Court to withhold the exercise of its contempt power. *Whitfield v. Pennington*, 832 F.2d 909, 914 (5th Cir. 1987).

The specific conduct which the trustee asserts constitutes sufficient cause for the imposition of contempt sanctions can be generally summarized as 1) failure to comply with the 2004 Exam Order by not appearing at the November 22, 2013 examination; 2) failure to comply with the Amended 2004 Notice by not producing responsive documents; 3) spoliation of evidence by failing to preserve data on the iPhone 4S; and 4) failing to disclose the loss (or destruction) of the iPhone 4S to the trustee or the Court.

> 1. *Failure to comply with the 2004 Exam Order by not appearing at the November 22, 2013 examination.*

The trustee issued the Notice of the November 22, 2013 examination on November 19, 2013. At the time, Ms. Paredes was not represented by counsel. Ms. Paredes contacted Mr. Aviles who communicated with the trustee on November 22, 2013. Ms. Paredes promptly agreed to an examination that took place on December 5, 2013. Given 1) the very short notice of the November 22, 2013 examination to an unsophisticated party; 2) Ms. Paredes was then proceeding *pro se*; and 3) Ms. Paredes' appearance at an examination shortly after the initially noticed date, the Court finds no conduct warranting contempt sanctions for Ms. Paredes' failure to appear at the November 22, 2013 examination.

> 2. *Failure to comply with the Amended 2004 Notice by not producing responsive documents.*

The 2004 Exam Order shortened the response time for producing responsive documents to ten days after the issuance of a document request by the trustee. The Amended 2004 Exam Notice, issued on November 19, 2013, contains document requests seeking, among other items, copies of text messages on Ms. Paredes' phone. Ms. Paredes appeared at the December 5, 2013 examination without producing any documents. Mr. Aviles deflected the trustee's scant questions about the lack of documents.

The Court questions whether Ms. Paredes genuinely understood her obligation to respond to the document requests. In reviewing the transcript of the 2004 examination, the Court notes that the trustee acknowledged that Ms. Paredes was never personally served. [Trustee Exhibit 8]. The Court can find no admitted evidence that Mr. Aviles agreed to accept service on behalf of Ms. Paredes. It is unclear to the Court whether Ms. Paredes actually knew about the document requests. Finally, the trustee's counsel repeatedly stated that "it's fine if you want to get that to us, you know, after the deposition." [Trustee Exhibit 8].

Part of the problem is the examination itself. For example, the transcript fails to state whether the examination was taken pursuant to the Federal Rules of Civil Procedure or something else. If the federal rules applied, Mr. Aviles routinely violated FED. R. CIV. P. 30(c)(2). If not, the Court is unclear as to whether the examination was of Ms. Paredes or of Mr. Aviles. The trustee routinely accepted uncorroborated and suggestive answers from Mr. Aviles. The Court will not put the shortcomings of the trustee's examination solely at Mr. Aviles' feet. While Mr. Aviles' conduct is offensive and designed to obfuscate, it was the trustee's burden to put a stop to it. A motion for contempt is simply the wrong vehicle.

Notwithstanding the foregoing, Ms. Paredes did not comply with the 2004 Exam Order or the Amended 2004 Notice. However, the trustee tacitly consented to the nonproduction. Furthermore, the trustee has proven no harm resulting from the nonproduction. The ends of justice would not be served if Ms. Paredes were sanctioned for conduct the trustee approved. The Court finds no conduct warranting contempt sanctions for Ms. Paredes' failure to produce documents in response to the Amended 2004 Exam Notice.

   3.     *Spoliation of evidence by failing to preserve data on the iPhone 4S.*

Spoliation is "'the destruction of evidence [or the] destruction, or the significant and meaningful alteration of a document or instrument.'" *Brewer v. Dowling*, 862 S.W.2d 156,158 n.2 (Tex. App.—Fort Worth 1993, writ denied) (quoting Black's Law Dictionary 1257 (5th ed. 1979)).

Under Texas law, a party seeking a finding that spoliation of evidence has occurred must establish: "(1) whether the accused party had a duty to preserve the evidence; (2) whether the accused party negligently or intentionally spoliated evidence; and (3) whether the spoliation prejudiced the other party's ability to present its case or defense." *In re Advanced Modular Power Sys., Inc.*, 413 B.R. at 663 (quoting *Offshore Pipelines, Inc. v. Schooley*, 984 S.W.2d 654, 666 (Tex. App.—Houston [1st Dist,] 1998, no pet.) (citing *Trevino v. Ortega*, 969 S.W.2d 950, 954–55 (Tex. 1998))).  In order to impose the severe sanction of an adverse inference, the trustee must present evidence that Ms. Paredes acted in bad faith. *West v. Hsu (In re Advanced Modular Power Sys., Inc.)*,  413 B.R. 643, 663 (Bankr. S.D. Tex. 2009).

The Court finds the trustee failed to meet his burden.  The Court carefully reviewed the testimony of Messrs. Price and Ramirez.  This Court is unable to reach a definitive conclusion as to what caused the data loss on the iPhone 4S.  In today's world, occasional data loss is an unfortunate fact of life.  Further, while the coincidence stretches the Court's imagination, Ms. Paredes' loss of the iPhone 4S is not extraordinary either.  The sequence of events is suspect.  The Court cannot, however, find by clear and convincing evidence that the loss of the data or the phone itself was purposeful or negligent.  Moreover, the Court finds the existence of circumstances exist that mitigate against imposing sanctions.

Ms. Paredes is not particularly sophisticated with regard to legal matters.  One can legitimately argue that she should have copied or printed the data from her phone.  One can also argue that given its stated importance, she should not have put herself in the position to lose the phone.  On the other hand, the trustee and his investigative team are extremely sophisticated.  The Court is at a loss to understand why the trustee did not take possession of the phone or back up the data when he had multiple opportunities to do so.  Ms. Paredes could easily have concluded that her phone and its contents were just not that important.  The Court is remiss to punish Ms. Paredes for a sequence of events that were preventable by the trustee.  The Court recognizes it has the benefit of hindsight.  It also has the benefit of nineteen years of experience in representing trustees.  A trustee should be mindful of the responsibilities he undertakes and should seize opportunities when they are presented.

The trustee failed to offer any evidence that Ms. Paredes acted in bad faith.  To the contrary, the weight of the evidence indicates Ms. Paredes attempted to share the data on her iPhone 4S with the trustee on multiple occasions.  Finally, the Court will not impute the conduct of her counsel to her as a demonstration of bad faith.

>   4.   *Failure to disclose the loss (or destruction) of the iPhone 4S to the trustee or the Court.*

The Court struggles for the right words to summarize Mr. Aviles' conduct in this case. Perhaps Dr. King said it best when he spoke the following words: "Morality cannot be legislated, but behavior can be regulated. Judicial decrees may not change the heart, but they restrain the heartless." MARTIN LUTHER KING, JR., LETTER FROM BIRMINGHAM CITY JAIL (April 16, 1963).

Mr. Aviles testified that he met Ms. Paredes several years ago while she worked as a hostess in a New York restaurant. When Ms. Paredes called him, Mr. Aviles abandoned all notions of morality, ethics and common sense to represent Ms. Paredes in exchange for the price of a plane ticket from New York to Miami. Mr. Aviles testified that his primary area of practice is personal injury. Mr. Aviles further testified that he has never been sanctioned by a court or disciplined by the New York state bar. Mr. Aviles readily admits that he is not admitted to practice in the State of Texas nor admitted to practice law in the federal courts of the Southern District of Texas. Mr. Aviles does not contest the fact that he did not seek *pro hac vice* admission in this case.

The Local Rules of the United States District Court for the Southern District of Texas apply to practice before the bankruptcy court. BANKRUPTCY LOCAL RULE 1001(b). The Local District Court Rules provide that the Texas Disciplinary Rules of Professional Conduct apply. District Court Local Rule 83.1L provides that the Rules of Discipline in Appendix A, which is attached to the local rules, govern attorney conduct in the Southern District of Texas. Rule 1A of Appendix A provides that the minimum standard of practice in the Southern District of Texas shall be the Texas Disciplinary Rules of Professional Conduct. Mr. Aviles violated at least the following Rules of Professional Conduct. *See In re Proeducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009).

<u>Unauthorized Practice of Law</u>

>   Rule 5.05 Unauthorized Practice of Law
>
>   A lawyer shall not:
>
>   >   (a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction.

Mr. Aviles appeared in the United States Bankruptcy Court for the Southern District of Texas on December 18, 2013. Mr. Aviles failed to seek authority to practice *pro hac vice* in this case. The Southern District of Texas publishes a very simple one-page form for the convenience of attorneys seeking *pro hac* admission. Mr. Avilies chose not to avail himself of that courtesy.

In response to questions from the Court, Mr. Aviles stated through counsel that the failure to seek *pro hac* admission was a simple oversight and only one hearing was involved. The Court finds no such exception in the rules. Mr. Aviles ignored his responsibilities and engaged in the unauthorized practice of law.

Duty of Candor

Rule 3.03 of the Texas Disciplinary Rules of Professional Conduct provides:

Rule 3.03.  Candor Toward the Tribunal
(a) A lawyer shall not knowingly:
   (1) make a false statement of material fact or law to a tribunal;
   (2) fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act;
   (3) in an ex parte proceeding, fail to disclose to the tribunal an unprivileged fact which the lawyer reasonably believes should be known by that entity for it to make an informed decision;
   (4) fail to disclose to the tribunal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
   (5) offer or use evidence that the lawyer knows to be false.
(b) If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall make a good faith effort to persuade the client to authorize the lawyer to correct or withdraw the false evidence. If such efforts are unsuccessful, the lawyer shall take reasonable remedial measures, including disclosure of the true facts.

The duty of candor applies not only to the duty to disclose material information relating to the merits of a matter, but also to "facts relating to the management of the case." *Prudential Ins. Co. of Am. v. U.S. Gypsum Co.*, 146 F. Supp. 2d 643, 653 (D.N.J.) 2001 (citing the comments to the New Jersey Rule of Professional Conduct 3.3 - Candor Towards the Tribunal).  *See In re Thomas*, 337 B.R. 879, 892, n.50 (Bankr. S.D. Tex. 2006) (noting the TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT, RULE 3.03: CANDOR TOWARD THE TRIBUNAL is similar in substance to NEW JERSEY RULE OF PROFESSIONAL CONDUCT, RULE 3.3(A)).   A failure to disclose may constitute a breach of an attorney's duty of candor.  *Blackwell v. Dep't of Offender Rehabilitation*, 807 F.2d. 914, 915 (11th Cir. 1987).

The Court finds that Mr. Aviles made a material false statement to the Court by making arguments about the production of a phone and then agreeing to produce the phone when he knew it was lost.  Mr. Aviles' conduct rises to the level of a fraud on the Court.  Mr. Aviles admits that he failed to inform the Court or opposing counsel that the iPhone 4S was lost until December 26, 2013 despite the trustee's ongoing efforts to obtain information from the phone.  Mr. Aviles ignored communications from the trustee regarding those efforts.  Further, Mr. Aviles actively participated in the December 18, 2013 hearing, arguing zestfully that the request for turnover of the phone and its content was an improper violation of Ms. Paredes' Fourth Amendment rights. [December 18, 2013 Transcript, 16:24-25]. Mr. Aviles also argued that the trustee's efforts were tantamount to a "fishing expedition" and were thus improper. [December 18, 2013 Transcript, 16:14]. This argument was, at best, specious.  Finally, Mr. Aviles made

disingenuous arguments regarding the process for recovery of the data when he knew of the impossibility of the task.

Mr. Aviles' explanation for his failure to disclose the loss was that he told Ms. Paredes to find the phone, and he hoped that she would be able to locate it before she was required to produce the phone. [January 9, 2014 Transcript, 176:1-8; 190:5-191:8]. He further explained that it was not until he arrived in Miami the morning of December 26, 2013 that he learned that the iPhone 4S was irretrievably lost. [January 9, 2014 Transcript, 180:17-181:9, 190:19-23]. The Court does not find this explanation credible. Even if the Court believed the testimony, Mr. Aviles breached his duty of candor to the Court when he failed to inform the Court that the iPhone 4S had been lost and participated in a hearing when he knew that the underlying premise of the hearing was false.

The Amended 2004 Notice requested documents that included data stored only on the iPhone 4S. The 2004 Exam Order required the turnover of that data requested in the Amended 2004 Notice to the trustee. The iPhone 4S was lost on December 10, 2013. Mr. Aviles had the ethical duty to disclose the fact that the iPhone 4S had been lost. Instead, Mr. Aviles stayed deliberately silent. Mr. Aviles did not respond to the trustee's inquiries requesting an update on the status of the data recovery effort. Mr. Aviles did not disclose the loss even after the trustee filed his Motion to Compel Turnover of the phone. Most troubling, Mr. Aviles failed to disclose the loss of the phone to the Court at the hearing on the trustee's motion. It was not until the day Mr. Aviles agreed the iPhone 4S would be turned over, some sixteen days after it was lost, that Mr. Aviles admitted that the iPhone 4S was gone. The complete disregard of professionalism exhibited by Mr. Aviles is troubling.

There is disagreement as to whether Mr. Aviles made his disclosures as soon as he entered the offices of the trustee's local counsel or if it occurred only after he was confronted. The Court finds the testimony of Messrs. Delancy and Ramirez to be credible. The Court finds the testimony of Mr. Aviles to be in contravention of his oath as well as his responsibilities as an attorney to the Court. Discovering that you have been duped is not a trivial event. The visceral reaction described by Mr. Delancy is logical and to be expected. Put simply, Messrs. Ramirez's and Delancy's stories make sense. Mr. Aviles' recount of the facts does not.

The Court's ultimate determination of whether to sanction Mr. Aviles is not impacted by the timing of the disclosure or the fact that the Court believes Mr. Aviles is, at best, mistaken in his memory of the events that occurred. The trustee incurred significant unnecessary expenses as a result of Mr. Aviles' conduct regardless of whether he made the disclosure upon entering counsel's office or minutes later. The Court finds that the trustee incurred expenses associated with fruitless data recovery efforts because Mr. Aviles failed to disclose to the trustee in a timely fashion that the source of the requested data, the iPhone 4S, was lost.

Mr. Aviles acknowledged it was a mistake not to inform the Court of the loss of the phone. The Court attributes Mr. Aviles' newly found candor to the involvement of skilled counsel that appeared on his behalf before this Court. Mr. Hughes is a fine attorney who understands the value of reputation and the significance of duty. It is not lost on the Court that

after Mr. Hughes' involvement, Mr. Aviles self-imposed the following remedial measures in an effort to mitigate the action this Court might take. [Docket No. 55, 14-302]:

- completing 7.5 hours of ethics related CLE course;
- reviewing the rules and case law regarding the appearance of counsel not admitted or licensed in a particular court; and
- a $2,500 donation to Houston Volunteer Lawyers Program.

Mr. Hughes' advice served Mr. Aviles well. The Court recognizes that it must impose the least onerous sanction to address the situation. *In re Parsley*, 384 B.R. 138, 182 (Bankr. S.D. Tex. 2008). The self-imposed sanctions do not, however, fully address the harm that has been incurred by the trustee and the bankruptcy process due to Mr. Aviles' conduct. Accordingly, the Court imposes the following compensatory and coercive sanctions:

- Mr. Aviles will pay monetary sanctions to the trustee in an amount equal to the professional fees and expenses incurred by the trustee from December 10, 2013 through June 11, 2014 that are directly attributable to the trustee's attempt to recover the iPhone 4S, including the motions to compel and for contempt. Within fourteen days of the entry date of this decision, the trustee shall file with the Clerk of the Court a bill of costs setting forth the itemized charges for which the trustee seeks reimbursement. Mr. Aviles will have fourteen days from the date of filing to review these charges and reach an agreement with the trustee. If the parties reach an agreement, the parties may submit an agreed form of order and notify the Court's case manager. Any agreement cannot involve the withdrawal of this opinion or accompanying order. If no agreement is reached, the trustee will file a written motion for a hearing. If a hearing is required, the trustee may request additional fees and expenses attributable to the hearing. Mr. Aviles will personally appear at any hearing and provide testimony to the Court. The Court may use this testimony to decide if further relief is warranted or if the Court's statutory duty for referral to the United States Attorney has been triggered.

- The trustee will send a copy of this opinion to the New York State Bar disciplinary committee or its equivalent for further action as they determine appropriate.

The Court hopes the compensatory sanctions, the self-imposed remedial sanctions, the out-of-pocket expenses incurred by Mr. Aviles in retaining counsel and the general unpleasant experience of being the subject of this proceeding will teach Mr. Aviles a valuable lesson and deter future ethical breaches.

## **CONCLUSION**

As set forth above, the court denies all relief against Ms. Paredes. The Court grants limited relief against Mr. Aviles as set forth above. All other relief is denied. A separate order consistent with this opinion will issue.

**SIGNED: June 18, 2014.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**